UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MELISSA GREGORY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:15-cv-00988 |
| ) | CHIEF JUDGE CRENSHAW |
| LOWE'S HOME CENTERS, LLC ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM

In this action that was removed from the Circuit Court for Sumner County, Tennessee, Melissa Gregory ("Gregory") brings claims against her employer Lowe's Home Centers, LLC (Lowe's), for gender discrimination, retaliation, and harassment in violation of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101. Lowe's has filed a Motion for Summary Judgment (Doc. No. 35), to which Gregory has filed a response in opposition (Doc. No. 54), and Lowe's has replied (Doc. No. 56). For the reasons that follow, summary judgment will be granted.

### I. Factual Background

### A.

Prior to reaching the facts surrounding Lowe's Motion for Summary Judgment, a preliminary observation is necessary. As required by this Court's Local Rule 56.01(b), Lowe's submitted a Statement of Undisputed Material Facts in support of its Motion, and, in accordance with Local Rule 56.01(c), Gregory submitted a response to that statement. However, in her Reply Memorandum, Gregory sets forth additional facts that do not appear in either Lowe's statement or her response.

1

Those facts should have been presented as "additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried," L.R. 56.01(c), so that Lowe's could have directly responded to them. Despite Gregory's failure to comply with the requirements of the Local Rules, the Court will consider her additional "facts" where relevant to the legal discussion. For purposes of setting forth the following factual background, however, the Court will confine itself to Lowe's statement and Gregory's response thereto (Doc. No. 55) (collectively cited as "SOF"), together with the deposition testimony, affidavits, and exhibits on which the statement and response rely.

**B.**

In May 2014, Gregory worked in an hourly position as a Return to Manufacturer ("RTM") Clerk at Lowe's Gallatin, Tennessee store. (SOF ¶ 17). An RTM clerk handles returned merchandise from customers and deals with vendors in order to secure credit for, or replacement of, damaged or defective goods. (Doc. No. 54-1, Gregory Dep. at 20).

As with all of its locations, Lowe's has several managers at the Gallatin store. At the top is the Store Manager who is in charge of overall operations. (SOF ¶ 2). Underneath the Store Manager are Assistant Store Managers ("ASMs"). Each ASM reports to the Store Manager and is assigned responsibility over certain areas of the store, such as electrical, plumbing, or paint. (Id. ¶ 3). Next in the descending hierarchy are the Department Managers, who report to the ASMs, but who are hourly employees that do not have the authority to discipline or terminate employees, even in their own departments. (Id. ¶¶ 4, 5).

Lowe's has a "No Harassment Policy," the terms of which require store employees to report any harassment concerns to the Store Manager, Store Human Resources Manager, Area Human

Resources Manager, Human Resources Director, or Employee Relations, but not to Department Managers. (Id. ¶ 6). Even so, that policy does not appear to prohibit complaints directly to Department Managers and, in fact, "Lowe's Equal Employment Opportunity Policy" requires managers to report discrimination and harassment claims up the chain-of-command, by providing that a "member of management, who has been informed of a complaint of discrimination, must immediately report it to Employee Relations, who is responsible for conducting an investigation." (Doc. No. 38-1 at 37). Further, Lowe's "Open Door Program Policy" provides that "[e]mployees should contact Store management . . . to resolve work-related questions or concerns," (id. at 28), without distinguishing between the levels of management.

On May 2, 2014, Gregory complained to Lisa Roberts, the Gallatin store Human Resources Manager, about Bobby Beasley, an hourly Product Service Associate. (SOF ¶¶ 7, 8). According to Gregory, Beasley entered her office earlier that morning and, while she was sitting on the edge of her chair, slapped her on the buttocks with a handful of zip ties and said something to the effect of, "bend over and take it." Gregory told Beasley not to touch her like that and to leave her office, which he did. (Id. ¶¶ 9, 10).

Shortly thereafter, Steve Gasaway, a Department Manager and Beasley's supervisor, entered Gregory's office and asked her to page Beasley. Gregory refused, and told Gasaway what had just transpired between her and Beasley. Gasaway told Gregory that she should report the incident to Roberts. (Id. ¶¶ 11, 13).

Although Gregory was upset, she worked for a period longer and then took her lunch break when she told her husband about the incident. (Id. ¶¶ 13, 14). Upon returning from lunch, Gregory reported the incident to her supervisor, Darryl Hartley, who was an ASM, and to her Department

3

Manager, Amanda Hladd.[1] (Id. ¶ 13).

At some point that same afternoon, Roberts asked Gregory to come to the Human Resources office to discuss the Beasley incident. (Id. ¶ 15). Gregory complied with that request and also provided a written statement that Roberts asked for. Roberts then told Gregory that she would investigate the matter.[2] (Id. ¶ 17). Because Gregory voiced concerns about being around Beasley, Roberts told her that she would instruct Beasley not to have any direct contact with Gregory until the investigation was complete.[3] (Id. ¶ 19).

The Beasley incident occurred on a Friday. By the time Gregory reported the incident to Roberts, Beasley had already left for the day, and neither he, Gregory, or Roberts was scheduled to work that weekend. (Id. ¶¶ 20, 21).

At 9:00 a.m. on Monday, May 5, 2014, Roberts and Hartley interviewed Beasley. According to Roberts, Beasley admitted that he (1) hit the side of Gregory's chair with a large zip tie; (2) may have hit her leg; and (3) said something along the lines of "stand up and grab the desk." (Doc. No. 38-2, Roberts Decl. ¶ 16). Beasley conceded that Gregory appeared to be offended by his conduct and claimed that he apologized and left the office. (Id. ¶ 17). He also stated, however, that he and Gregory had "cut up with each other on occasion" and that Gregory had made

---

[1] At various points in the record, Hladd is referred to by that surname, as well as by "Campbell" and "Adams." For consistency, the Court will refer to her as Hladd.

[2] Gregory claims Roberts also told her that she had "other stuff she was working on." (Gregory Dep. at 33).

[3] In response to Lowe's statement of fact on this point, Gregory claims that she "was forced to continue to work with Beasley in confined areas," (id.) and cites both her deposition testimony and that of Hladd for this assertion. That testimony indicates Gregory worked in a "plywood cage" office in the receiving area and, on one occasion during this period, Beasley entered her office because he had a product that needed to be returned to a vendor. Besides that one time, Gregory claims that she heard Beasley working on several occasions in the receiving area, but outside of the cage. (Gregory Dep. at 35-36).

4

inappropriate comments to him in the past. (Id. ¶¶ 18, 19). Gregory disputes this assertion, testifying in her deposition that she did not joke around with Beasley or others and that, when Beasley made inappropriate jokes or comments, she would "tr[y] to laugh it off and walk away[.]" (Gregory Dep. at 24).

Also on May 5, 2014, Gregory provided another statement to Human Resources in which she recounted the events involving Beasley. In that statement, she wrote, "[o]nce before he [Beasley] smacked me on the bottom with a clipboard while I was in receiving." (Doc,. No. 52 at 2). She also wrote that the incident was never reported.[4]

Beasley was not suspended during the investigation because, according to Roberts, Lowe's practice was to "give everybody the benefit of the doubt," and not to suspend an employee pending an investigation unless there are extenuating circumstances that create a safety concern. (SOF ¶ 26). Furthermore, in light of what Beasley said about his and Gregory's joking around in the past, Ms. Roberts wanted to clarify that point. (Roberts Dep. at 31-32). Regardless, and based upon the investigation conducted by Roberts and Hartley, Beasley was terminated from his employment with Lowe's on the morning of Wednesday, May 7, 2014. (SOF ¶ 25).

Following the incident, Tammie Brown, an Area Human Resources Manager, referred Gregory to Lowe's "Employee Assistance Program" so that Gregory could speak to someone regarding the Beasley incident if she so desired. (Id. ¶ 28). Additionally, Roberts occasionally went to Gregory's office to check in on her and to make sure that she was doing well at work. Roberts also told Gregory on several occasions that if she had any employment issues, she should come to

---

[4] This point is not mentioned by Gregory in response to Lowe's Statement of Facts, nor does Lowe's mention it in their summary judgment filings. For her part, Gregory mentions it only in passing in her response brief.

her with them. (Id. ¶ 29).

In April 2016, eight months after this lawsuit was filed, Gregory applied for an Installed Sales Department Manager position at the Gallatin store, but was not selected. (Id. ¶ 30). Lowe's claims the primary decision-maker for that position was Sales Manager Josh Cline, who was not involved in the complaint against Beasley or its investigation. (Id.¶ 31). Lowe's contends Gregory was not chosen because she was not the highest scorer during the interview process. (Roberts Dep. at 64). Gregory takes issue with this assertion because the interview was oral and thus the scoring was subjective. She also claims that "despite her extensive experience at the Gallatin store in jobs ranging from cashier to department manage [sic], she was passed over for a candidate from outside of the Gallatin store who only had administration experience." (SOF ¶ 31).

## II. Standard of Review

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Pennington v. State Farm Mut. Auto. Ins. Co., 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. Van Gorder v. Grand Trunk W. R.R., Inc., 509 F.3d 265, 268 (6th Cir. 2007). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Instead, the Court determines whether sufficient evidence has been presented to make the material issue of fact a

6

proper jury question. Id. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. Rodgers, 344 F.3d at 595.

### III. Legal Analysis

As indicated at the outset, Gregory's claims are brought under the THRA. Because the purpose of the Act is to "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964" and other federal civil rights laws, Tenn. Code Ann. 4-21-101(a)(1), Tennessee courts "[g]enerally interpret the THRA similarly, if not identically, to Title VII." Ferguson v. Middle Tenn. State Univ., 451 S.W.3d 375, 381 (Tenn. 2014); see Bredesen v. Tenn. Judicial Selection Comm'n, 214 S.W.3d 419, 430 (Tenn. 2007) (stating that although Tennessee courts are not bound by federal law, "[t]he policy of interpreting the THRA coextensively with Title VII is predicated upon a desire to maintain continuity between state and federal law"); Parker v. Warren Cnty. Util. Dist., 2 S.W.3d 170, 172 (Tenn. 1999) (stating that the Tennessee legislature "intended the THRA 'to be coextensive with federal law'"). This is true with respect to harassment/hostile work environment claims, Bailey v. USF Holland, Inc., 526 F.3d 880, 885 n.1 (6th Cir. 2008), retaliation claims, Ferguson, 451 S.W.3d at 381, and gender discrimination claims, Sybrandt v. Home Depot, U.S.A., Inc., 560 F.3d 553, 557 (6th Cir. 2009), all of which are alleged in the Complaint.[5]

---

[5] Although Gregory sets forth all three causes of action in her Complaint, she identifies no adverse employment action to support a self-standing gender discrimination claim. For that reasons, Lowe's has treated the gender discrimination claim as being a part of Gregory's sexual harassment claim. The Court will do likewise because, not only does Gregory fail to identify an adverse employment action apart from alleged harassment and her claim for retaliation, she fails to address a separate gender discrimination claim in her response brief. See Wierengo v. Akal Sec., Inc., 580 F. App'x 364, 369 (6th Cir. 2014) (agreeing with district court's conclusion that where plaintiff did not address her state-law claims in her response brief to a motion for summary judgment, those claims were abandoned); McDonald v. UAW-GM Ctr. for Human Res., 2016

7

**A. Sexual Harassment/Hostile Work Environment Claim**

The THRA makes it unlawful for an employer "to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's . . . sex," Tenn. Code Ann. § 4-21-401(a)(1), and the Tennessee Supreme Court has interpreted that provision to prohibit a hostile work environment. Campbell v. Florida Steel Corp., 919 S.W.2d 26, 31 (Tenn. 1996). "To prevail on a hostile work environment claim in a sexual harassment case, an employee must assert and prove that (1) the employee is a member of a protected class; (2) the employee was subjected to unwelcomed sexual harassment; (3) the harassment occurred because of the employee's gender; (4) the harassment affected a 'term, condition, or privilege' of employment; and (5) the employer knew, or should have known of the harassment and failed to respond with prompt and appropriate corrective action." Id.; Bazemore v. Performance Food Grp., Inc., 478 S.W.3d 628, 636 (Tenn. Ct. App. 2015) (utilizing same elements).

Plaintiff first argues that "[t]he hostility of a work environment is fact specific and is to be determined by the trier of fact." (Doc. No. 54 at 11). This is true insofar as it goes but, for a harassment claim to be actionable, a plaintiff must show "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. at 21, 21 (1993). Indeed, this is "[t]he touchstone of any hostile work

---

WL 5074133, at *2 (E.D. Mich. Sept. 20, 2016) (stating that while "Plaintiff initially claimed harassment based on her disability, she abandoned that claim by failing to address it in her response brief"); Conkwright v. Nat'l Ass'n of State Boards of Accountancy, Inc., 2015 WL 1279585, at *1 (M.D. Tenn. Mar. 20, 2015) (stating that because "Conkwright did not oppose dismissal of the pay discrimination claim in her Response brief, the court construes Conkwright as abandoning her pay discrimination claim," and that "claim is subject to dismissal on that basis alone").

8

environment claim[.]" Khamati v. Sec'y of Dep't of the Treasury, 557 F. App'x 434, 443 (6th Cir. 2014); see McCoy v. Mv Residential Prop. Mgmt., Inc., 2016 WL 1392483, at *1 (S.D. Ohio Apr. 8, 2016) (citation omitted) ("The touchstone of a hostile work environment claim is proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult[.]'"); Stone v. Premier Orthopaedics & Sports Med., PLC, 2015 WL 4487778, at *6 (M.D. Tenn. July 23, 2015) (same).

In determining whether a workplace is hostile, a court is to consider the "totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance.'" Smith v. Rock-Tenn Servs., Inc., 813 F.3d 298, 309 (6th Cir. 2016) (citing Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 733 (6th Cir. 2006)). "This analysis includes both an objective and subjective component: would a reasonable person find the work environment hostile or abusive, and did the plaintiff subjectively believe it to be so." Antis v. Finishing Brands Holdings, Inc., 639 F. App'x 313, 318 (6th Cir. 2016); Williams v. Gen. Motors Corp., 187 F.3d 553, 565 (6th Cir. 1999). As the United States Supreme Court stated in the context of Title VII:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

Harris, 510 U.S. at 21-22. This language applies to sexual harassment claims under the THRA as well. Campbell, 919 S.W.2d at 26; Mbeyu v. Delta Air Lines, Inc., 2015 WL 5821644, at *3 (W.D. Tenn. Oct. 5, 2015).

Here, Gregory has provided sufficient evidence to meet the subjective component of a hostile

9

work environment claim. She testified in her deposition that, immediately after the Beasley incident, she was "upset," and that, within a day or two of the incident, she went to her physician and told him that she "couldn't sleep," "couldn't really eat," and that she was "sick at [her] stomach" thinking about having to go back to work with Beasley. (Doc. No. 38-1, Gregory Dep. at 46). Gregory also testified that, based upon her complaint, her doctor prescribed Paxil or a similar anti-anxiety medication, which she took from May 2014 until she got pregnant in September 2014. (Id.). Gregory further testified that her anxiety continued after Beasley was fired and, in fact, that she suffered from anxiety caused by the incident up until the time of her deposition, which was two years later. (Id. at 48).

Gregory's claim fails, however, on the objective component of a hostile work environment claim. In the Complaint, the only allegation of harassment is Gregory's claim that "[o]n May 8, 2014, [she] was sexually harassed by a co-worker, Bobby Beasley." (Doc. No. 1-2, Complaint ¶ 7). The undisputed evidence before the Court regarding this incident is that Beasley (1) walked into Gregory's office; (2) hit her on the buttocks with a handful of zip-ties, (3) said something along the lines of "bend over and take it," and (4) left the office when told to do so by Gregory. (SOF ¶¶ 9, 10). While the Sixth Circuit has long held that 'harassment involving an element of physical invasion is more severe than harassing comments alone," Smith, 813 F.3d at 209 (citation omitted), and although the inquiry into whether an environment is hostile is not subject to a "mathematically precise test," Harris, 510 U.S. at 22, the May 8 incident, even coupled with the clipboard incident, is insufficient as a matter of law to establish the objective component of a hostile work environment claim. See Clark v. United Parcel Serv., Inc., 400 F.3d 341, 351–52 (6th Cir. 2005) (finding summary judgment appropriate where an employee claimed that a co-worker "told vulgar jokes, that

10

he twice placed his vibrating pager on her thigh as he passed her in the hall, and most significantly, he pulled at her overalls after she told him she was wearing a thong"); Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 328 (5th Cir. 2004) (no jury question presented on sexual harassment claim where the evidence showed that during 1½ year period co-worker remarked about another employee's body, slapped plaintiff "on the behind with a newspaper," "grabbed or brushed" against plaintiff's behind, once held plaintiff's cheeks and tried to kiss her, asked plaintiff to come to his office so they could be alone, and watched plaintiff wash her hands in the bathroom); Burnett v. Tyco Corp., 203 F.3d 980, 985 (6th Cir. 2000) (holding that "under the totality of the circumstances, a single battery coupled with two merely offensive remarks over a six-month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment"); Stacy v. Shoney's, Inc., 1998 WL 165139, at *1-3 (6th Cir. Mar. 31, 1998) (summary judgment appropriate where, over two month period, supervisor continuously made sexually suggestive comments about his subordinate's appearance, touched her breast on several occasions when removing and replacing a pen in her pocket, leered at her, and told her that if he had someone like her, he would never let her leave the house).

To shore up her hostile work environment claim, Gregory adds new facts to the summary judgment record by way of her reply brief. Even leaving aside the impropriety of that practice, the addition of those facts does not change this Court's conclusion that Gregory has insufficient evidence from which a jury could conclude that she was subjected to a hostile work environment.

Gregory cherry-picks and distorts the deposition testimony of Hladd, Gasaway, and Charles Morris, the Store Manager, in an effort to show that harassment at the Gallatin store was rampant,

11

and that Beasley was a serial harasser.[6] Her assertions do no not withstand scrutiny.

For example, Gregory cites Hladd as saying she heard comments to the effect of "bend over and take it," "get on your knees," and stay "down there," and that you get "numb" to such comments, just like you would if you "worked in a bar." (Doc. No. 54 at 7). However, while Hladd admitted to hearing such comments, she also pointed out that you hear "a lot of such" remarks when you work around contractors, truck drivers, vendors, and customers. (Doc. No. 54-3, Hladd Dep. at 21-22). Further, while Hladd admitted that inappropriate comments were made by associates, she also stated that they were made jokingly between associates that know each other and further that such comments were made both by male and female associates. (Id. at 22).

Gregory also argues that Gasaway "was aware of [Beasley's] prior history of sexual harassment to the point he wondered why he [Beasley] hadn't already gotten in trouble." (Doc. No. 54 at 8). However, while Gasaway concedes in his deposition that employees in the "break room cut up and joked with each other," and that he had "been told" that Beasley's comments or jokes had more of a sexual overtone than other employee's comments, Gasaway also testified that he never "witnessed" Beasley making sexual comments or having sexual conversations in the workplace. (Doc. No. 54-8, Gasaway Dep. at 13-15). Similarly, Hladd testified that she had "never seen [Beasley] be physical," and that she could not "remember a specific incident of anything that he said." (Id. at 19).

Gregory also contends that Morris was told by Roberts "that there was a history of sexual harassment behavior in the store." (Doc. No. 54 at 8). However, in the referenced portion of his

---

[6] Gregory also argues that Morris and Hartley "were responsible for allowing Beasley to harass females sexually in the workplace with no consequences," (Doc. No. 54 at 17), but no citation to the record is provided for that assertion.

deposition, Morris testified that Roberts told him that, around the time of the Beasley incident, some employees gathered in the morning in the receiving area of the store and "talked about different things," during which time "inappropriate comments" were made and that sexual comments "very likely came up at some point[.]" (Doc. No. 54-5, Morris Dep. at 10-11). This does not suggest that Morris found the atmosphere in the store to be as hostile as Gregory suggests.

The foregoing additional evidence provided by Gregory does not support the conclusion that Gregory was subjected to a hostile working environment as that phrase had been construed under the law. The Supreme Court has repeatedly stated that "'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 82 (1998)). Furthermore, while the Court is to "consider evidence of other acts of harassment of which a plaintiff becomes aware during the period [of] his or her employment, even if the other acts were directed at others and occurred outside of the plaintiff's presence," Smith, 813 F.3d at 309–10, Gregory has failed to present sufficient evidence from which a jury could conclude her work environment was objectively hostile.

Apart from what has already been discussed, Gregory argues "that she has been maliciously ostracized from her supervisors and co-workers, has been subjected to repeated moves, shifts, and unwarranted scrutiny, and has been denied a promotion–all due to having come forth as a woman being harassed." (Doc. No. 54 at 13). Again, no citation is provided to the record for that contention.

Gregory also argues, this time with citation to her deposition testimony, that Lowe's subjected her "to ridicule and jokes about the situation by co-workers" and that "[t]o make matters

13

worse, . . . Tammie Brown, the Area Human Resources Manager, . . . instructed Ms. Gregory **not to speak of the incident.**" (Doc. No. 54 at 3) (emphasis in original). In actuality, Gregory testified in her deposition that one employee made a joke "to the effect of don't do anything to Melissa, she'll get you fired," and another employee kept asking Gregory what happened. (Doc. No. 38-1, Gregory Dep. at 40). In response, Gregory went to Brown, who, Gregory claims, "instructed her not to talk about it" and gave her a "canned response" for people who asked because Gregory did not, in fact, want to talk about it. (Id. at 40-41).

Finally, Gregory asserts that "[a]s result of [the Beasley] incident and her complaints, Ms Gregory has been forced to handle her current job responsibilities as well as her former job responsibilities, thereby significantly increasing her workload." (Doc. 54 at 9). While Gregory cites her deposition for this statement, what she actually said was that she had to do some of the duties of the RTM clerk in addition to her present duties because "[t]he girl that's there can't keep up with what's on[.]" (Doc. No. 38-1, Gregory Dep. at 45). This obviously is quite different from saying that her duties were increased for complaining about sexual harassment.

Even if Gregory could establish the objective component of a hostile work environment claim, summary judgment is appropriate because she cannot meet the fifth element of that claim–that Lowe's "knew or should have known about the harassing conduct but failed to take corrective or preventative actions." Bailey, 526 F.3d at 885. This is because "[a] company may be held liable for coworker harassment" only "if its 'response manifests indifference or unreasonableness in light of the facts the employer knew or should have known.'" Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 338 (6th Cir. 2008) ; see West v. Tyson Foods, Inc., 374 Fed. App'x 624, 632 (6th Cir. 2010) (stating that liability for coworker harassment may attach where employer's response to

known harassment "reflected an attitude of permissiveness"). "This test seeks to advance the goals of Title VII while ensuring that employers are held liable for only their own indifferent or unreasonable behavior." Hawkins, 517 F.3d at 338 (citing Blankenship v. Parke Care Ctrs., Inc., 123 F.3d 868 (6th Cir.1997)).[7]

No such showing has been made here, notwithstanding Gregory's contention that "[t]here is an immense genuine issue of material fact as to whether the Defendant's response to Ms. Gregory's harassment manifested indifference or unreasonableness in light of the facts that it knew at the time." (Doc. No. 54 at 13). The undisputed evidence is that on the day of the incident, May, 2, 2014, Gregory was summoned to Roberts' office where she aired her complaint and submitted a statement. The first thing in the morning on May 5, 2014– after the intervening weekend–Roberts interviewed Beasley to get his side of the story, after which the investigation continued. On the morning of May 7, 2014, Beasley was fired, less than three business days from the report to Roberts.

Gregory faults Lowe's for allowing "Beasley to falsely accuse the victim," and for allowing Beasley to continue working during the investigation. However, "[t]he most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified," Swenson v. Potter, 271 F.3d 1184, 1193 (9th Cir. 2001), and it would be a poor investigation indeed were both the accuser and accused not asked their version of events. Furthermore, Beasley was instructed to stay away from Gregory during the investigation and, although he violated this instruction on one occasion by approaching

---

[7] The Sixth Circuit in Hawkins went on to note that this is the correct standard even in light of the Supreme Court's decisions in Faragher v. City of Boca Raton, 524 U.S. 775, 780, 807 (1998) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 758-59 (1998). While Gregory argues that "the Faragher/Ellerth defense is a matter to be determined by a trier of fact as to liability for damages suffered by Plaintiff," (Doc. No. 54 at 14), Lowe's is not relying on this affirmative defense. Instead, Lowe's is simply arguing that Gregory cannot meet the fifth essential element of a hostile work environment claim.

her about an admittedly work-related issue, that is insufficient to form the basis of liability. See, Wierengo v. Akal Sec., Inc., 580 F. App'x 364 (6th Cir. 2014) (stating that employer "did not have a duty to ensure that [accuser and accused] were separated at all times"); Mullins v. Goodyear Tire & Rubber Co., 291 F. App'x 744, 749 (6th Cir. 2008) (agreeing "with the district court that by instructing [accused] not to bother [accuser], and to avoid spending unnecessary time in [her] area, [employer] acted in a reasonable manner"); Swenson, 271 F.3d at 1192 ("Postal Service was not required to provide [accuser] an [accused-] free workplace merely because she complained about him").

Finally, Gregory argues that Lowe's should have been on notice about harassment given her "repeated reports to her supervisor of Beasley's conduct," as well as "the testimony of other employees, including HR members, of a history of prior complaints and behavior in the workplace." (Doc. No. 54 at 13). Again, Gregory provides no citations to the record for these assertions and in her deposition she testified that the only time she reported Beasley was for the May 2, 2014 incident. (Doc. No. 38-1, Gregory Dep. at 24-5).

Based upon the foregoing, Lowe's is entitled to summary judgment on Gregory's sexual harassment/hostile work environment claim.

**B. Retaliation**

Under the THRA, it is a "a discriminatory practice for a person or for two (2) or more persons to . . . retaliate or discriminate in any manner against a person because such person has opposed a practice declared discriminatory by this chapter." Tenn. Code Ann. § 4-21-301. "To prevail on a THRA [retaliation] claim, an employee must prove '(1) that the employee engaged in protected activity; (2) that the employer knew about the employee's protected activity; (3) that the

employer subsequently took a materially adverse action against the employee; and (4) a causal connection between the employee's protected activity and the resulting adverse action.'" Ferguson, 451 S.W.3d at 382 (quoting Sykes v. Chattanooga Hous. Auth., 343 S.W.3d 18, 29 (Tenn. 2011)).[8]

Gregory devotes little more than one page of her 16½ page reply brief arguing her retaliation claim. Brevity aside, Gregory has mustered insufficient facts to support such a claim.

To being with, Gregory's retaliation claim is premised on Lowe's refusal to promote her to the position of Installed Sales Department Manager and choosing Tish Evans instead. Leaving aside that Gregory never moved to amend her Complaint to add that allegation, Lowe's decision was made almost two years after Gregory complained about Beasley and this is not sufficient by itself to establish a causal connection. See Clark County School District v. Breeden, 532 U.S. 268, 273–74 (2001) (finding that a causal connection was not warranted where, among other things, almost two years elapsed between the employee's participation in protected activity and the adverse employment decision); Siegner v. Twp. of Salem, 654 F. App'x 223, 232 (6th Cir. 2016) (stating that, where two years elapsed between protected activity and adverse employment action, "timing is not on plaintiff's side" and that "[t]wo years is not very close"); Hillman v. Shelby Cty., 515 F.

---

[8] Even though Gregory has no direct proof of retaliation, the parties do not utilize the McDonnell Douglas/Burdine burden-shifting framework for indirect cases. This may be because of the uncertainty about its application under Tennessee law given the Tennessee's Supreme Court decisions in Gossett v. Tractor Supply Co., 320 S.W.3d 777 (Tenn. 2010), and that court's recent opinion in Rye v. Women's Care Ctr. of Memphis, 477 S.W.3d 235, 262 n. 11 (Tenn. 2015), that declined to address the continuing validity of Gossett. While the Sixth Circuit has stated "that an amendment to Tenn. Code Ann. § 4-21-311(e) . . . appears to abrogate Gossett," and while federal trial courts in this state have decided that they are not bound by Gossett because it addressed Tennessee's summary judgment rule, see e.g., Foreman v. Five Star Food Serv., Inc., 950 F. Supp. 2d 958, 975 (M.D. Tenn. 2013); Reed v. Inland Intermodal Logistics Servs., Inc.,, 2011 WL 4565450, at *5-7 (W.D. Tenn. Sept. 29, 2011), the Court will not utilize the burden-shifting paradigm because Gregory simply cannot establish the essential elements of a retaliation claim.

App'x 365, 370 (6th Cir. 2013) (finding two year gap insufficient to support causal connection).

Assuming Gregory could show causation based on her assertion that both Hartley and Morris were involved in the hiring decision,[9] her retaliation claim still fails. Gregory argues that "she was just as qualified as, if not more than" Evans and that she "had extensive experience at this particular store including as a department manager in the paint and home décor department [while] Evans had none but had only served as an administrative assistant in Kentucky." (Doc. No. 54 at 17). However, Evans was not an administrative assistant. Instead, she was the "Department Manager of Administration" at Lowe's Franklin, Kentucky store. (Doc. No. 54-5, Morris Dep. at 17). Further, Evans was a Department Manager at the time she was selected, whereas Gregory had not been such a manager since 2011.

"[A] plaintiff making a retaliation claim under the THRA 'must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.'" Goree v. United Parcel Serv., Inc., 490 S.W.3d 413, 440 (Tenn. Ct. App. 2015) (quoting Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2534 (2013)). In her deposition, Gregory testified that she felt "like . . . the reason [she] didn't get the promotion" was because of the complaint against Beasley, and that she felt "like [she] was more qualified than the person that got it." (Doc. No. 54-1, Gregory Dep. at 44). However, a plaintiff's subjective beliefs and speculation that an adverse employment action was retaliatory is insufficient to withstand a motion for summary judgment. Dean-Lis v. McHugh, 598 F. App'x 412, 415 (6th Cir. 2015); Carson v. Ford Motor Co., 413 F. App'x 820, 824

---

[9] Lowe's asserts in its Statement of Facts that Sales Manager Cline was the decision maker and that he had no involvement in the complaint against Beasley. Gregory does not directly address this contention in her response to that statement. (SOF ¶ 31).

(6th Cir. 2011); Adair v. Charter Cty. of Wayne, 452 F.3d 482, 491 (6th Cir. 2006).

Lowe's in entitled to summary judgment on Gregory's retaliation claim as well.

## IV. Conclusion

On the basis of the foregoing, Lowe's Motion for Summary Judgment will be granted and Gregory's claims will be dismissed.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE